# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CP-00322-COA

**GARRICK MILLER A/K/A GARRICK L. MILLER**                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                           **APPELLEE**

DATE OF JUDGMENT:                   02/22/2023
TRIAL JUDGE:                                HON. GRADY FRANKLIN TOLLISON III
COURT FROM WHICH APPEALED:   CHICKASAW COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:         GARRICK MILLER (PRO SE)
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART
NATURE OF THE CASE:                 CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                               AFFIRMED - 11/26/2024
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Garrick Miller, appearing pro se, appeals the Chickasaw County Circuit Court's denial of his motion for post-conviction relief (PCR). On appeal, Miller argues that (1) the trial court failed to explicitly state the terms and conditions of his probation at the time the court suspended his sentence and placed him on probation, and (2) the trial court lacked jurisdiction to revoke his suspended sentence.

¶2.     Finding no error, we affirm the trial court's order denying Miller's PCR motion.

## FACTS

¶3.     A Chickasaw County grand jury indicted Miller for possession of a controlled

substance (cocaine). In October 2021, Miller entered an *Alford*[1] plea to possession of a controlled substance (cocaine). The trial court sentenced Miller as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2020) to serve eight years in the custody of the Mississippi Department of Corrections (MDOC), with all eight years suspended. The trial court conditioned Miller's suspended sentence upon Miller's "good behavior and [his] strict compliance with all of the conditions given by the [c]ourt and/or set forth below under [Mississippi Code Annotated] section 47-7-35[.]" The trial court also placed Miller on five years of supervised probation subject to the conditions of probation set forth in section 47-7-35 (Rev. 2015), including the condition that Miller "[c]ommit no offense against the laws of this state or any other state of the United States . . . ."

¶4. While on supervised probation, Miller sold methamphetamine to undercover officers with the North Mississippi Narcotics Task Force. He was also arrested for possessing and selling cocaine. In January 2022, MDOC field officer Sherlaine Mims filed an affidavit in the trial court alleging that Miller violated the conditions of his supervised probation by committing three new felonies. The State then filed a petition to revoke Miller's supervised probation based on these violations and impose his suspended sentence.

¶5. The trial court held a revocation hearing where the State presented testimony that Miller committed three new crimes (all felonies) while on probation. The trial court ultimately found that Miller more likely than not violated the terms of his suspended sentence by "[f]ailing to live at liberty without violating any laws." On January 26, 2022, the trial

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

court entered an order revoking Miller's supervised probation and imposing his previously suspended eight-year sentence.

¶6. In January 2023, Miller filed a PCR motion seeking to set aside the revocation and vacate his reinstated sentence. In his PCR motion, Miller asserted the following claims: the trial court failed to explicitly state or orally inform Miller of the conditions of his suspended sentence; the trial court lacked the authority to alter Miller's sentence; the trial court failed to issue a written statement of the evidence relied on and reason for revoking Miller's suspended sentence; and the trial court relied upon insufficient evidence in revoking Miller's suspended sentence.

¶7. The trial court entered an order denying Miller's PCR motion. This appeal followed.

## STANDARD OF REVIEW

¶8. When reviewing the trial court's denial or dismissal of a PCR motion, the appellate court will reverse the judgment only if the "factual findings are clearly erroneous." *Berry v. State*, 230 So. 3d 360, 362 (¶3) (Miss. Ct. App. 2017) (internal quotation mark omitted). Questions of law, however, are reviewed de novo. *Id*.

## DISCUSSION

¶9. As a procedural matter, the State argues that Miller's appellate brief fails to comply with Mississippi Rule of Appellate Procedure 28(a) and that therefore this Court should not consider Miller's claims on appeal. It is true that Miller's appellate brief fails to comply with Rule 28(a) in several material respects. *See* M.R.A.P. 28(a)(3)-(7). Because Miller's brief does not comply with the requirements of Rule 28(a), his claims are procedurally barred from

3

appellate review. *Friley v. State*, 366 So. 3d 959, 962 (¶2) (Miss. Ct. App. 2023).

¶10. In his reply brief, Miller defends his failure to comply with Rule 28(a) by arguing that he is proceeding pro se.[2] "While pro se litigants are afforded some leniency, they must be held to substantially the same standards of litigation conduct as members of the bar." *Sumrell v. State*, 972 So. 2d 572, 574 (¶6) (Miss. 2008) (internal quotation marks omitted). However, the supreme court has also held that "where a prisoner is proceeding pro se, we shall take into consideration that fact, and in our discretion, not dismiss meritorious complaints simply because they are not artfully drafted." *Lewis v. State*, 776 So. 2d 679, 680 (¶8) (Miss. 2000).[3] Keeping this in mind, we choose to proceed with our appellate review of Miller's PCR claims despite his procedural faults. *See Robinson v. Burton*, 49 So. 3d 660, 665 (¶18) (Miss. Ct. App. 2010).

## I. Terms and Conditions of Probation and Suspended Sentence

¶11. On appeal, Miller argues that the trial court failed to explicitly state the terms and conditions of his probation at the time it suspended his sentence and placed him on probation. Miller also asserts that the trial court failed to orally inform him that his suspended sentence and supervised probation were contingent on any terms and conditions. Miller argues that

---

[2] In his reply brief, Miller also argues for the first time that new evidence exists that "directly contradicts" the State's claims that Miller's probation was lawfully revoked and that Miller was present during his intake by MDOC officers at the probation office. This Court has repeatedly stated that "we will not consider issues raised for the first time in an appellant's reply brief." *Chisholm v. State*, 298 So. 3d 1046, 1050 (¶13) (Miss. Ct. App. 2020). Because Miller raised this issue for the first time in his reply brief, the issue is waived.

[3] *See* Miss. Code Ann. § 99-39-25(1) (Rev. 2015); M.R.A.P. 2(c) (suspension of rules).

for these reasons, the trial court erred in revoking his probation and imposing his previously suspended sentence.

¶12. "Under Mississippi law, probation may be revoked upon a showing that the defendant more likely than not violated the terms of probation." *Gray v. State*, 269 So. 3d 331, 337 (¶21) (Miss. Ct. App. 2018) (quoting *Smith v. State*, 196 So. 3d 986, 996 (¶31) (Miss. Ct. App. 2015)). However, "it is necessary for that court to base its revocation on the violation of the clear terms and conditions of the suspended sentence." *Artis v. State*, 643 So. 2d 533, 537 (Miss. 1994).

¶13. Miller cites *Artis* in support of his claim that because the trial court failed to explicitly state any conditions upon Miller's probation and suspended sentence, Miller's probation could not be revoked. In *Artis*, the defendant, Artis, was convicted of armed robbery and manslaughter. *Id*. at 534. The trial court sentenced Artis to serve twenty-five years in the custody of the MDOC, with twenty years suspended, for the armed-robbery conviction, and twenty years in the custody of the MDOC, with fifteen years suspended, for the manslaughter conviction. *Id*. The trial court "expressly ruled that there would be no probation." *Id*. After Artis was convicted of attempting to obtain a controlled substance by misrepresentation, the trial court revoked Artis's suspended sentence for the armed robbery conviction. *Id*. Artis filed a PCR motion arguing that the revocation was improper because the trial court failed to impose a probationary period and failed to impose any terms and conditions on the defendant's suspended sentences. *Id*. After the trial court denied his PCR motion, the defendant appealed. *Id*.

¶14.    On appeal, the Mississippi Supreme Court found that the trial court failed to explicitly state any conditions upon Artis's suspended sentences. *Id*. at 537. The supreme court accordingly held that based on this failure, Artis's suspended sentence for armed robbery could not be revoked. *Id*. at 538. The supreme court explained,

> The problem in this case is that the trial court suspended a portion of Artis' sentences, gave him no probation, made no mention, orally or in writing, of terms and conditions of the suspended sentences, and then later revoked his suspended sentence on the armed robbery cause for the violation of terms and conditions of his suspended sentence.

*Id*. at 537. The supreme court clarified that "it is necessary for [the trial court] court to base its revocation on the violation of the clear terms and conditions of the suspended sentence."

*Id*.

¶15.    Although the trial court in *Artis* failed to articulate any terms and conditions of the defendant's suspended sentences, we find that the trial court in the present case expressly articulated the terms and conditions of Miller's suspended sentence and his supervised probation. The record contains the transcripts from Miller's plea hearing and revocation hearing, as well as his sentencing order. The transcript from Miller's plea hearing shows that the trial court accepted Miller's *Alford* plea to possession of cocaine and sentenced Miller as a habitual offender to serve eight years in the custody of the MDOC, with all eight years suspended. The trial court placed Miller on supervised probation for five years and asked Miller if he understood that he would "have certain terms and conditions" to meet while on supervised probation. Miller answered affirmatively. The trial court then informed Miller that his probation officer would remind Miller of the terms and conditions of his probation.

6

¶16.    Miller's sentencing order reflects his sentence to eight suspended years in the custody of the MDOC.  In the order, the circuit court specified the conditions of Miller's suspended sentence, explaining that "[the] suspended sentence is conditional upon [Miller's] good behavior and strict compliance with all of the conditions given by the [c]ourt and/or set forth below under section 47-7-35[.]"  The order also reflects that the trial court placed Miller on five years of supervised probation.  The trial court expressly stated that Miller's supervised probation was "subject to the following rules of probation" as set forth in section 47-7-35.  The trial court then listed the conditions set forth in section 47-7-35, including the condition that Miller "[c]ommit no offense against the laws of this state or any other state of the United States, or of the United States[.]"

¶17.    At his revocation hearing, Miller claimed that he was not informed of the terms and conditions of his supervised probation and suspended sentence.  The State submitted Miller's sentencing order into evidence, and the trial court observed that "it was signed by [Miller]."[4] Field officer Mims testified that she witnessed Miller sign his sentencing order during his intake at the MDOC probation office.  The transcript also reflects that Miller admitted he knew it was illegal to sell cocaine.

¶18.    Our review of the record shows that the trial court clearly set forth in writing the terms

_____

    [4] Miller's October 5, 2021 sentencing order is in the record before us, but the copy of that same order that the trial court admitted into evidence at the revocation hearing does not appear in the record before us.  However, testimony from the hearing confirms that the copy of the sentencing order admitted at the revocation hearing was signed by Miller on October 12, 2021.

and conditions of Miller's suspended sentence and supervised probation.[5] We therefore find

no merit to Miller's claim on this issue.

## II.    Revocation of Suspended Sentence

¶19.    Miller also asserts that the trial court lacked jurisdiction to "resentence" him at the

revocation hearing.  In support of his argument, Miller cites *Harrigill v. State*, 403 So. 2d

867 (Miss. 1981), where the supreme court held,

> When a criminal case has been completed and the term of court ends, unless
> the circuit court has deferred sentence, or placed the defendant upon a
> suspended sentence and retained jurisdiction for this specific purpose as
> authorized by statute, the power of the circuit court to alter or amend its
> sentence is terminated.

*Id*. at 869.

¶20.    Contrary to Miller's claim, the record shows that when the trial court ordered Miller

to serve his suspended sentence, the trial court was not altering or amending Miller's

sentence; rather, "it was merely enforcing the sentence originally given." *Anderson v. State*,

89 So. 3d 645, 651 (¶14) (Miss. Ct. App. 2011).  As stated, the trial court heard testimony

that Miller committed three new felonies while on probation, which violated the terms and

conditions of his probation and suspended sentence.[6]  After finding that Miller more likely

---

[5] In *Artis*, the supreme court stated that "due process requires that the trial judge *at least orally* inform the defendant of the terms and conditions upon which his suspended sentence is contingent before it may be properly revoked for the violation of those terms and conditions." *Id*. at 538 (emphasis added).  However, this Court has clarified that *Artis* "does not require a court to orally inform the probationer of the terms and conditions of his probation, *when such information has been recorded in written form*." *McClinton v. State*, 799 So. 2d 123, 126 (¶6) (Miss. Ct. App. 2001) (emphasis added).

[6] Miller does not dispute that he committed felonies while on probation.

than not violated the terms of his probation by "[f]ailing to live at liberty without violating any laws," the trial court revoked Miller's probation and imposed his previously suspended eight-year sentence. The supreme court has clarified that "[a] probationer does not have to be convicted of a crime to be in violation of his probation[,] but, rather, probation may be revoked when it is more likely than not that a violation has occurred." *McCalpin v. State*, 166 So. 3d 24, 26-27 (¶7) (Miss. 2013). A trial court also has the authority to revoke a defendant's probation and "impose any or all of the sentence" if the trial court "finds by a preponderance of the evidence[] that a probationer . . . has committed a felony[.]" Miss. Code Ann. § 47-7-37.1 (Rev. 2023).

¶21. Upon finding that Miller violated the terms of his probation by committing felonies, the trial court in this case possessed the authority to fully reinstate Miller's previously suspended eight-year sentence. We therefore find no merit to Miller's claim that the trial court improperly resentenced him.

## CONCLUSION

¶22. We find that the trial court did not err in denying Miller's PCR motion. We therefore affirm the trial court's order.

¶23. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH, EMFINGER AND WEDDLE, JJ., CONCUR.**